We proceed to the next case, APCOM Power v. The Workers' Compensation Commission, number 4090807. Counsel, please. Good morning, Your Honors. Andrew Fernandez for the plaintiff appellant. We have actually three sets of issues with the decision. We believe there's issues of fact and issues of law. An issue in the commission decision, first being that we believe it was erroneous to find that Mr. Dickerson suffered a work-related injury. We take dispute with the award of payment of medical bills, TTD, and penalties. And we also think there was a due process violation in disallowing the bifurcation or continuance for the... You keep calling this a bifurcation. It's nothing more than you run the continuance to bring your witness. What is the bifurcation? What are you bifurcating? The trial in order to present... You didn't bring your witnesses in. You asked for a continuance to bring your witnesses in, which you call a bifurcation. I don't understand why you call it a bifurcation. This is a simple question of whether they abused discretion for not giving you a continuance to bring in the witnesses you didn't have. And we believe it was an abuse of discretion to not provide for a continuance because in not providing for a continuance, which was also requested, that prohibited the respondent from effectively refuting highly disputed issues of accident causation. You knew about his witnesses, didn't you? Yes. You had them on the call? They just didn't answer the phone? That is my understanding, yes. What do you call bifurcation? You say, claimant presents his testimony, and then you get to present yours, and that's the bifurcation? In this particular situation, yes. And how is it different from a continuance? I guess they would be substantively the same, I suppose. You're familiar with the concept of bifurcation and other actions of law, aren't you? Yes. Normally it means that the court can rule on something that it's left with before it. What could it have ruled on afterwards? Afterwards, we would hope that they would revisit the issues of accident, causal connection, and particularly accident and causal connection. No, no, no. That means if it went back. Correct. No, no, no. Bifurcated means that there's something left before the court can rule on that has binding effect on the parties. And at the time you asked for what you call bifurcation, what could the court have ruled on that would have any binding effect on the parties? All you had was what? Testimony of the claimant? At the time, yes. Examination and cross-examination? Correct. And what could the court, or the fact finder, ruled on at that point that would have binding effect on the parties? Any aspect of this litigation? At that time, if there was no rebuttal evidence, assuming that the court found that the testimony of the claimant was credible, which it did, they could effectively rule against the respondent, which they did. But you're sort of exalting form over substance. It would be within the discretion of the arbitrator to grant the continuance. What is different in this case than any other case? Presumably, under your argument, any time you have the situation where you can't line up your witnesses, you ought to automatically get a continuance. That seems to be what you're arguing. What's different about this situation than any other case where the witnesses don't answer the phone? Well, I would argue this particular case is different in that we have issues with regard to the petitioner's testimony on practically every single case. There's a fundamental element of law that makes up his claim. Did you know about him before you started the hearing? To be perfectly honest, Your Honor, I was still in law school at the time this case was done. Why did you have the witnesses on standby? Pardon me? What was the purpose of having the witnesses on standby, beginning with? In the event that the matter would actually proceed to trial. Well, it did. It did. And you just didn't bring them. And once you needed them, you couldn't find them. You're saying you didn't do this because you were in law school. You're falling back on the old law school. Well, I'm about to say it. No, my fault. Secretary. But, no, I mean, this is no different than somebody just doesn't show up with their witnesses. That seems to be true. Okay, well, let's see. Was anyone here listed on the master? Did they try the case? I'm sorry? Is there a Bradley now? Yes. They tried it? I believe he did, yes. And they sent you? Correct. Correct. Congratulations. Thank you. You should thank them for this. Assume there was no abuse of discretion. Would you tell us what's wrong with the commission's decision? I'm sorry? Assume that there was no abuse of discretion in refusing to grant a continuance for you to bring in the witnesses. Tell us what's wrong with the commission's decision. Well, there's issues as to whether a petitioner ever suffered a work-related injury. He has a history of chronic low back pain. The record is replete with evidence showing that he has a degenerative condition. He has had at least three prior back injuries. We cite a case in our brief stating that symptoms of a preexisting condition that could be aggravated by normal daily activity should not be compensable. And that's what the medical evidence seems to suggest. There is evidence in the record that our petitioner lied, that he lied on the stand. Are you saying if the work duty is aggravated by a preexisting condition, there can be no recovery? Is that what you're saying? In certain instances, yes. Who lied on the stand? I'm sorry? Did you say somebody lied? Yeah, the petitioner. What did the commission say about the petitioner? Well, the commission ultimately found his testimony credible, and they relied on it. Can they do that? They can do that. We think it was improper, however. We think that the manifest way of the evidence goes against that. Manifest way of the evidence means an opposite conclusion is clearly apparent. Absolutely. But why is an opposite conclusion clearly apparent? Because if you read the record, you will see that the petitioner cannot keep his story straight. He changes his story several times. There are exhibits attached that show that the petitioner lied on employment applications, asking him to state his medical history, where he states he had not had any preexisting conditions, where his medical history shows that he has had several preexisting health conditions. Could the commission have found that he lied to get a job but did not lie about his back condition or the injury in this case? Are they two separate things? Well, had that issue come up, I believe they would be two separate things. I mean, that's entirely possible, but I do not believe the commission spoke as to that. Additionally, we don't believe that the petitioner ever proved that this accident arose out of any work-related injury. Actually, his testimony, which we argue is not credible to begin with, he states that he didn't know what his injury was from. This is pretty logical since he had a significant history of preexisting conditions. Of course he didn't know what his injury was from. He probably just figured it was one of his many ailments. He also didn't prove any causal connection. His treating doctor, rather than stating this was a work-related injury for which he was treating, only noted that there were chronic problems, chronic back problems. Additionally, MRIs that were submitted into evidence showed that the petitioner was normal except for normal degenerative conditions, normal degenerative changes in his lower back, which are consistent with his preexisting condition. And that's on top of the fact that although notice, we admit, is not normally a bar to a claim, the petitioner did not provide his employer with notice of any work-related injury. He simply told his employer that he was injured. He was sick. His employer had no idea that he was claiming injury as a result of some alleged work accident. Wait a minute, didn't he specifically inform his supervisor how he was hurt on November 4, 2007, in the same fashion he testified to during the arbitration hearing? He informed our supervisor. Yes, he did not inform his supervisor, and he did not inform the supervisor that he suffered a work injury. He simply informed the supervisor that he was injured. Well, didn't he describe how he injured himself? I don't believe he did. With regard to the medical bills, the TDD, and penalties, the petitioner failed to authenticate the medical records. So as an evidentiary matter, we'd argue that there was no foundation for their admissibility. Did you agree that he subpoenaed them? I don't believe that. They were listed as having been subpoenaed in the record. Subpoenaed in the record? I mean, didn't you object to them and then withdraw your objection? We did object to them. And then you withdrew your objection, did you not? I don't recall having, again, I don't recall having withdrawn that objection. Assuming that we did withdraw that objection, which honestly I don't recall, then I would have a moot argument with regard to that. If the record reflects that you withdrew your objection, then you withdraw the issue, right? Correct. With regard to TDD, there was no physician's report, no physician's note authorizing the petitioner to be off of work. Does law require that? We believe so. The Illinois Administrative Code says that for a petitioner to be entitled to TDD, he or she must have a physician's report. However, in this case, the petitioner just brought in a note that was signed from a nurse that was not indicative of any work-related accident and simply stated that the petitioner was to be off of work. So you have some case law handy that says that that's insufficient as a matter of law? This is a matter of first impression, we believe. We could not find any case law that said specifically that it needed to be a physician's report. However, the Code does specify that the physician and not any other person is the person who should be authorizing this sort of note. And as a public policy matter, we believe that were this court to lower its standards such that a petitioner could be taken off of work by a nurse or anyone other than that? Who's Dr. Kumpel? That was a petitioner's treating physician. He take a petitioner off of work on November 12th? He did not. He didn't sign the off-duty slip? He didn't take her off of work on November 12th? There was an electronic signature on the note. That was the one for November 9th. Pardon me? That was the one for November 9th. If I'm not mistaken, I believe he saw her November 9th, and then the petitioner went back November 12th, and then again November 27th. And the first time that Dr. Kumpel actually visited with the petitioner was on the 27th, at which time Dr. Kumpel did not authorize the petitioner to be off of work. That wasn't my question. My question was, didn't Dr. Kumpel sign the off-duty slip for November 12th? No. Are you sure? I am relatively certain, yes. November 9th is an electronic signature. I'm not sure that November 12th is. November 6th is the nurse practitioner, good until November 12th. November 9th is an electronic signature. November 12th is Dr. Kumpel's signature. So what do we do with that? My notes reflect on my understanding of the case is that petitioner testimony also confirms that petitioner did not see Dr. Kumpel, and Dr. Kumpel did not authorize petitioner to be off work at all, although she has notes that were signed by a nurse and also notes that were apparently electronically signed by Dr. Kumpel. She did not actually visit with him until the 27th. I see I'm out of time. Thank you. Counsel, please. My name is Casey Matlock, and I'm here from the Strong Law Offices. Why don't you go backwards on the response to Judge Hoffman's question? Yes, Your Honor. Specifically, could you repeat your question? I apologize. My question is, did Kumpel sign that November 12th off-duty slip? It's my understanding that... There are two of them, November 9th and November 12th. My understanding of the situation is that on November 6th, my client, Mr. Dickerson, presented to his family doctor. He called to make an appointment. Basically, they told him Dr. Kumpel was unavailable and that he could only see or was only available to see the physician's assistant, I guess, or nurse practitioner. He went in. She took him off work on November 6th. November 9th, then, I believe there was an electronically signed off-work slip taking the petitioner off from Dr. Kumpel. November 12th, I believe, according to my reading and understanding of the transcript and the records, there was an electronically dictated note in the computer from Dr. Kumpel also taking him off work. So both signatures for the 12th and the 9th were electronic? That is my understanding, yes, Your Honor. Okay. Now, what's the law on this that you understand? Who can sign, what the effect of that is, and whether you... And what's the same about electronic signatures? I mean, what's the relevance of that? Well, I think that the law is that, simply stated that an off-work slip needs to be signed by your medical provider. I don't think there is anything specifically out there, and I think the opposing counsel did touch on that, that specifically says, you know, a treating physician who is a medically licensed doctor has to sign in writing and not electronically. In fact, a chiropractor can also sign an off-work slip or a restricted-duty slip, and they are not a medically licensed doctor. So in answer to your question, I'm not sure if there is any specific case law out there. So you think the nurse practitioner who's actually examined the claimant would be empowered to do so? Well, I believe so, Your Honor. I mean, our client made an attempt to go to his doctor. His doctor obviously entrusted his patients to this nurse practitioner who did see patients and who the doctor monitored, Dr. Kumpa, and obviously she did feel that an off-work slip was necessary, and Dr. Kumpa obliged... I mean, later on did sign one, signed a couple, so therefore I don't think that you should penalize the petitioner because Dr. Kumpa was not necessarily available and he had his nurse practitioner... He has the right to sign the off-work slip. It's my understanding that it's not specifically pointed out. I believe it's a medical provider, but I don't have the actual statute and I'm not aware. Medical provider, not licensed physician? I have to apologize. I'm not sure I have the statute where I'd be able to... What statute would we be looking at? Again, I'm not sure if I would have that specific statute on me right now. I think the opposing counsel is talking about the administrative code in some oblique sense. I'm not sure of the administrative code. I'm not sure exactly what he's citing, so I don't want to comment on it without having the knowledge of it. What you're saying in any event, your fallback position is that the doctor ultimately, albeit by electronic signature, did confirm the off-duty work order? Yes, I think that's clear by the evidence. I think it's clear by the testimony in the hearing in front of the arbitrator. Why should the claimant be penalized for an electronic signature as opposed to a signature on paper? Thank you. Specifically, then moving on to some other points that counsel brought up, in terms of the first thing we were talking about, the due process violation and the bifurcation as opposed to the continuance. It is simply my understanding that the respondent's attorney did present for trial. He was ready for the trial. He made no objections before the trial started. His witnesses were on standby, so therefore I'm not sure what due process rights were violated. They cited a case in their brief. They cited Walker. Actually, I apologize. They cited the Board of Education, Pilate v. Industrial Commission. I apologize. That's the case they cited. In that case, it was simply a request for a... The claimant actually wanted to give rebuttal testimony from what a doctor testified to, and the arbitrator in that particular case actually disallowed the rebuttal testimony. The claimant was there in court and was obviously available to testify, and it was overturned at the Pilate level. In this particular case, it's completely different. The witnesses were not there. They were not in court. They had every opportunity to be. The notice of the hearing was sent out in timely fashion, so that particular argument just does not hold water specifically. In terms of the rest of the issues, it just comes down to credibility and the evidence that was presented. Our client simply testified to what happened, who he saw. The respondent's attorney questioned him, had no evidence, though, to support any other conclusions. The arbitrator found him totally credible, made the decision based on that and the evidence that was presented at trial, and now the respondents are simply trying to have a new trial, I suppose, and submit new evidence and have new witnesses testify, which they could have done initially. Because of all those things, we ask that the court uphold the decision of the arbitrator in this commission. Thank you. Rebuttal, please. The administrative quote section that you cited, is it in your brief? Yes, it is. Certainly, I'm not sure if it's in the initial brief, but it is absolutely in the reply brief. It wasn't in your initial brief? I'm not sure. It is in your initial brief. It's on page 15. Okay. You cite the section 7020.80. Correct. A1B2. Correct. Which specifically says that a petition for immediate hearing under section 19B must allege that the petitioner is not receiving temporary total disability or medical benefits, which is entitled, may file a petition for immediate hearing as provided in section 19B of the Workers' Compensation Act. On appropriate form provided by the commission, the petition shall set forth a statement that assigned physicians report of recent date relating to the employee's current inability to work or a description of such other evidence of temporary total disability as appropriate under the circumstance has been delivered to the respondent. That's what it said, right? Correct. Right in front of you. All right, so then I think it's the next question. Why, as a matter of logic or public policy, would you want to penalize the claimant because his or her physician chooses to send it in with an electronic signature? Doesn't that seem, again, we're on the subject of exalting form over substance? I can see that point, but I would argue emphatically no. You can see it. No. No. And here's why. If a petitioner simply presents an electronic signature by a doctor, we have no evidence regarding what was entailed in obtaining that signature. We don't know about the examination that took place. We don't know anything about the person who actually looked at the petitioner. How would you know that it came in the mail with an original signature? What's the difference? The difference is that if the doctor were to sign the note that the doctor personally had examined the petitioner, which is not the case here. Wait a minute. Wait a minute. Why does it say he has to personally examine them? Why are we back at that? Because I believe that matter goes hand in hand with how he signs it. An electronic signature, in this case, is indicative of the fact that the doctor didn't actually see the petitioner. But does he have to actually see the petitioner? In order to sign off, did he slip? I believe that's implied in the language of the code, absolutely. Further beyond that, you have a disjunctive or a description of such other evidence of CT disability. Why doesn't the nurse practitioner's off-duty work slip fall under that? Well, it could if this court so rules, but we believe that that would open up Pandora's box, essentially, such that any petitioner could go to practically anybody and be authorized to get TTD payment without regard to the person who is examining the petitioner and their qualifications. Thank you.